IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| COACH, INC. and COACH SERVICES, INC. | |
|---|---|
| Plaintiffs, | 8:16-CV-338 |
| vs. | MEMORANDUM AND ORDER |
| RAJA D. QUINN, d/b/a WHOLESALE OUTLET, a/k/a RAJA DEJOURN FASHIONS & FAWAZ MUMTAZ RETAIL OUTLET, | |
| Defendant. | |

This matter is before the Court on the renewed motion for default judgment (filing 49) filed by the plaintiffs, Coach, Inc. and Coach Services, Inc. (collectively, Coach). The Court will grant the motion and award $5,000 in damages.

The Court's Memorandum and Order of November 2, 2017 (filing 40) set forth the Court's findings that the admitted allegations of Coach's complaint constitute a legitimate cause of action against defendant Raja Quinn for both mark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and violation of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-301 *et seq.* Filing 40 at 5-6. The Court's Memorandum and Order also set forth the Court's finding that Coach was entitled to a permanent injunction to be entered at final judgment. Filing 40 at 6-7. The only pending issues unresolved by the Court's Memorandum and Order were damages and attorney fees. *See* filing 40 at 11-12.

DAMAGES

The Lanham Act permits a plaintiff to recover the defendant's profits, any damages sustained by the plaintiff, and the costs of the action. 15 U.S.C. § 1117(a). But in a case involving the use of a counterfeit mark, a plaintiff may instead elect to recover

> an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

§ 1117(c). Coach has made such an election in this case.

Coach has moved for an award of $400,000. Filing 50 at 12. The Court has already found that Quinn's conduct was willful, and willfulness may also be inferred from a failure to defend. Filing 40 at 8. And as the Court outlined in its previous memorandum and order, § 1117(c) itself does not provide guidelines for the Court in determining an appropriate award, instead leaving it to the Court's discretion to award an amount it "considers just." Filing 40 at 7-9 (collecting cases). The Court must exercise discretion in examining whatever facts and considerations are available in a setting of limited information. Filing 40 at 9.

The plaintiff, however, should not secure a windfall. *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1089 (N.D. Cal. 2014); *Rolls-Royce PLC v. Rolls-Royce USA, Inc.,* 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010); *Century 21 Real Estate LLC v. Bercosa Corp.,* 666 F. Supp. 2d 274, 293 (E.D.N.Y. 2009). And, analogizing to the similarly worded statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), the Court considers

> (1) the defendant's expenses saved and profits reaped; (2) the plaintiff's lost revenue; (3) the value of the trademark; (4) general deterrence; (5) the willfulness of the defendant's conduct; (6) the defendant's cooperation in providing records from which to determine the value of the infringing products; and (7) specific deterrence of the defendant.

Filing 40 at 9.

But in this case, the Court has very little to work with when considering those factors. In its previous Memorandum and Order, the Court observed that Coach ought to be able to provide evidence of the value of its marks. Filing 40 at 10. And, the Court suggested, Coach might be able to present evidence of how much revenue a business like Quinn's would be expected to generate, or how much revenue Coach might have lost. Filing 40 at 10. "[E]vidence of hypothetical fees and projected revenues (or any other evidence Coach is able to provide) might give the Court a basis," the Court advised, "not just to approximate profits and damages, but also determine what amount would serve as appropriate deterrence." Filing 40 at 11.

Coach offered the Court very little additional help in that regard. *See* filing 50. In fact, while Coach alleged that the counterfeit sunglasses at issue here were purchased for $35, filing 1 at 12, Coach hasn't even offered the

3

Court evidence of the retail price of a genuine pair of Coach sunglasses. Nor has Coach offered the Court anything more than speculation upon which to assess the general scope of Quinn's infringing activity—so, at the end of the day, all the Court has is one pair of phony $35 sunglasses.

And what remains problematic for the Court is that there is no reason to believe Coach lost revenue from Quinn's infringement of Coach's marks. Quinn's storefront shop wasn't on an upscale boulevard, between Burberry and Stuart Weitzman—it was in a working-class business district where his nearest neighbors, it appears, were a taquería, a head shop, a thrift store, and Dollar General. That is to say, there is absolutely no reason to believe anyone purchasing ersatz "Coach" sunglasses from a small store in South Omaha was a lost customer for genuine Coach merchandise, or had any illusions about what was being purchased. And the Court's overarching obligation to award damages that the Court "considers just" does not permit it to enter a six-figure judgment against a business that was almost certainly not worth that much, lock, stock, and barrel.[1]

While the Court has considered all the factors listed above, the Court finds that the most relevant factors in this case are the defendant's profits, general deterrence, and specific deterrence of the defendant. The Court finds that those interests are sufficiently served by statutory damages under the Lanham Act in the amount of $5,000.00.

## ATTORNEY'S FEES

Coach has also moved for costs and attorney's fees. The UDTPA provides that costs shall be allowed to a prevailing party and that attorney's

---

[1] The Court is not persuaded that Quinn's promotional, self-aggrandizing tweets, *see* filing 50 at 9, should be taken seriously, or that they are particularly relevant to this case.

fees may be allowed if the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive. Neb. Rev. Stat. § 87-303.[2] The Court has already determined that Quinn's conduct was willful. But while Coach asserts it is "entitled to an award" of costs and attorney's fees, filing 50 at 10, only the costs are mandatory under the UDTPA. *See* § 87-303(b). Whether attorney fees should be awarded is entrusted to the Court "in its discretion," and while Quinn has obviously not asserted a viable defense, the Court also finds nothing particularly exceptional about this case. *See id.*; *ADT Sec. Servs., Inc. v. A/C Sec. Sys., Inc.*, 736 N.W.2d 737, 767-68 (Neb. Ct. App. 2007).

But there is a more pressing problem with Coach's request for costs and attorney's fees, and that is that Coach's evidentiary showing in support of its request is wholly insufficient—and not for the first time. Coach previously asked for attorney's fees. *See* filing 39 at 9. But, the Court explained,

> it is well established that the burden rests with counsel to establish the factual basis to support an award of attorney fees. Counsel has yet to provide the Court with any, much less sufficient, evidence of its costs and fees incurred, or a basis for evaluating the fairness and reasonability of those fees. As such, the Court will consider Coach's request for attorney fees at final judgment based on evidence—should counsel choose to present any—of reasonable fees incurred.

---

[2] Coach seems to have abandoned its claim for attorney fees under the Lanham Act. *See* filing 50 at 10-11.

5

Filing 40 at 12 (citations omitted). Coach now asks for $90,329.50 in attorney's fees and costs. Filing 50 at 10.

But Coach's support for that request is an affidavit in which counsel avers that they have spent $90,329.50 "on behalf of Coach throughout this litigation" in "attorneys' fees and costs." Filing 50-5 at 1. Then, Coach sets forth the hourly billing rates for the three lawyers who've appeared for Coach in this case. Filing 50-5 at 2. And counsel opines that amount "is fair, reasonable and appropriate[.]" Filing 50-5 at 2.

Coach has not, however, presented the Court with evidence from which it can actually assess the reasonableness of the requested attorney's fees.

> Courts utilize two main approaches to analyzing a request for attorney fees. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation.

*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996). It doesn't seem like Coach is suggesting a "percentage of the benefit" approach—and even if it was, the percentage of the benefit method is limited to circumstances in which the attorneys have gathered a common fund during the course of the litigation. *See*, *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622-23 (8th Cir. 2017); *Petrovic v. Amoco Oil Co.*, 200

F.3d 1140, 1157 (8th Cir. 1999); *Johnston*, 83 F.3d at 244-45. And this is not a common-fund case.[3]

So, the Court must rely on the lodestar approach, but lacks any basis for applying it—that is, the Court has no information about how many hours were spent by counsel on this case, or how those hours were used.

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, the Court has not even been told what part of the requested award is costs, and what part is attorney's fees. Without a breakdown of the costs, the Court cannot assess which (if any) of those costs are actually recoverable. *See* 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Without knowing how many hours were spent working on the case, the Court cannot even begin a lodestar analysis. And without knowing how those hours were used, the Court cannot find support for the counterintuitive conclusion that it was fair and reasonable to incur over

---

[3] And even in a common-fund case, the lodestar method serves to double-check the result of the percentage-of-the-fund method. *In re Life Time Fitness*, 847 F.3d at 622-23; *Petrovic*, 200 F.3d at 1157.

7

$90,000 in costs and fees for a scorched-earth pursuit of the vendor of a pair of knockoff sunglasses.

Based on that evidentiary insufficiency, the Court will deny Coach's request for costs and attorney's fees at this point. Coach may still file a post-judgment motion for costs and attorney's fees pursuant to Rule 54(d). Should Coach decide to do so, counsel's attention should be drawn to the principles and authorities set forth above, as well as this Court's local rules, particularly NECivR 54.1, 54.3, and 54.4.

IT IS ORDERED:

1. Coach's motion for default judgment (filing 49) is granted.

2. Judgment will be entered for Coach, and against Quinn, in the amount of $5,000.00.

3. Quinn is permanently enjoined from using Coach's marks, or any other mark alone or in connection with another word or symbol which is confusingly similar to Coach's marks, or which is likely to cause confusion or mistake or to deceive.

4. A separate judgment will be entered.

Dated this 22nd day of May, 2018.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge